Kenneth M. BOGGS, Movant,

v.

KENTUCKY BAR ASSOCIATION, Respondent.

No. 2011–SC–000073–KB.

Supreme Court of Kentucky.

Aug. 25, 2011.

### OPINION AND ORDER

Kenneth M. Boggs (KBA No. 06037), who was admitted to the practice of law in Kentucky in 1971 and whose bar roster address is P.O. Box 606, Barbourville, Kentucky 40906, desires to terminate Kentucky Bar Association (KBA) proceedings against him by consenting to a thirty-day suspension, with the period of suspension probated on the conditions that: (1) Boggs attend and pass the exam at the next Ethics and Professionalism Enhancement Program (EPEP) offered by the KBA and (2) Boggs receive no disciplinary charges for a period of one year from the date of the entry of this order. The KBA does not object.

The facts underlying the disciplinary charges against Boggs do not appear to be in dispute.[1] This case arises out of Boggs's representation of two defendants in a 2008–2009 criminal proceeding and representation of a juvenile who faced similar charges in a juvenile proceeding. Both proceedings were related to a 2007 emergency juvenile custody proceeding in which Boggs served as court-appointed counsel for a parent whose child was temporarily removed from the home

In 2007, Boggs was appointed by the Knox Family Court to represent M.S. in an emergency juvenile custody proceeding. M.S. and his wife had left their baby daughter with his wife's cousin, B.M., who was then a minor, for the weekend. The baby appeared to have been injured and

---

1. Since the KBA does not appear to dispute the facts as presented in Boggs's motion, we have largely followed his version of the facts in this opinion.

possibly abused upon the parents' return. After the baby was examined by medical personnel and social workers for the Commonwealth began to investigate, the two minor children of M.S. and his wife were then placed in emergency custody by the Cabinet for Families and Children.

Boggs avers that his representation of M.S. in the emergency juvenile custody proceeding was of limited scope and duration. Boggs states that he reviewed the court file and conferred with M.S. and that M.S. cooperated with social workers to try to reunite his family. But by the time Boggs was appointed, M.S. had already been interviewed by police and told police he had no personal knowledge regarding which persons had contact with the baby during the weekend in which the baby was allegedly abused.

Boggs acknowledges that he appeared before the Knox Family Court on one occasion in 2007 on M.S.'s behalf. But social workers and the Kentucky State Police had already conducted their investigations. And the social workers and County Attorney advised the Court that they were satisfied that M.S. and his wife had nothing to do with the alleged abuse and that the children should be returned to the custody of M.S. and his wife. The emergency custody proceeding was resolved within approximately twenty-one days.

About a year later—in late 2008—the Knox County grand jury indicted three adults on sexual abuse charges in connection with the allegations that M.S.'s baby had been abused. None of the three criminal defendants was specifically accused of causing the baby's injuries, but the indictment stated that the abuse occurred while the baby was with the three criminal de-

fendants. B.M., the minor cousin of M.S.'s wife who had kept the baby the weekend abuse allegedly occurred, faced similar charges in a juvenile proceeding. The juvenile proceeding against B.M. was later dismissed on the Commonwealth's motion.

Boggs was retained as defense counsel by two of the three adults charged in the criminal indictment; and the minor, B.M., accused in a juvenile proceeding. The two adults represented by Boggs alleged they did not know what happened to cause the baby's injuries and that the baby was not abused but suggested that any injuries might have been caused by a ring worn by B.M. Boggs admits that he was aware that M.S. took the position that the baby had been abused while in the care of the criminal defendants. However, he also notes, for purposes of mitigation, that "the position of [M.S.] was not based on any personal knowledge he had of what had occurred; and at no time did Mr. Boggs represent" M.S.'s wife.

Several months after the criminal case began in Knox Circuit Court, it was dismissed on the Commonwealth's motion, apparently for lack of sufficient proof. Shortly before the criminal case was dismissed, Boggs's adult clients in the case signed respective waivers of dual or multiple representation.[2] Boggs admits that he should have obtained the waivers during the initial stages of the criminal proceedings, that he did not obtain the waivers in a timely manner "notwithstanding the Court's direction that he obtain such waivers at an earlier stage of the proceedings[,]"[3] and that he failed to obtain the waivers until M.S. filed a bar complaint against him. And he admits that he should have sought an express conflict

---

2. Boggs's motion does not mention whether any waiver of dual or multiple representation was ever entered on B.M.'s behalf.

3. We believe that Boggs is referring to the trial court.

waiver from M.S. before assuming the representation of defendants in the related criminal proceeding.[4]

■ Boggs was charged with violating, and admits violating, three Kentucky Supreme Court Rules (SCR):

1) SCR 3.130–1.4(b) (requiring that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation") by failing to adequately explain the nature of the criminal charges and the issues of multiple representation to B.M. and his two adult clients in the criminal proceeding;

2) SCR 3.130–1.7(b)(2) (then prohibiting[5] a lawyer from representing a client if "the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless ... the client consents after consultation" and requiring that when a lawyer represents multiple clients in a single matter, "the consultation shall include explanation of the implications of the common representation and the advantages and risks involved") by failing to properly explain the meaning of confidentiality and the reasonably foreseeable manner in which conflicts of interest could adversely affect each client; and

3) SCR 1.130–1.9(a) (then prohibiting a lawyer from representing "another person in the same or a substantially related matter [as the matter in which the lawyer represented a former client] in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation[,]"[6]) by his representing the defendants without consent from his former client (M.S.) in a matter substantially related to his representation of M.S. and in which his current clients' position was materially adverse to the former client's interest.

■ The parties have agreed to a negotiated sanction under SCR 3.480(2). The KBA states that it has concluded that the negotiated sanction of a thirty-day suspension from the practice of law, probated on the conditions as outlined above, is an appropriate sanction after reviewing the facts of this disciplinary case, relevant case law, and Boggs's disciplinary history.

The KBA notes that Boggs previously received a public reprimand for violating SCR 3.130–1.9(a) (requiring that a lawyer obtain written informed consent from former client before representing another client on the same or substantially related matter as former client) in *Boggs v. Kentucky Bar Association*, 999 S.W.2d 709

---

**4.** We note that Boggs asserted in his answer to the charges that he never formally entered an appearance in B.M.'s juvenile proceeding, although he admits being retained on B.M.'s behalf. It is not clear whether Boggs admits that he also should have obtained any sort of waiver from or on behalf of B.M. or consent from M.S. before representing B.M.

**5.** The Inquiry Commission issued its charge against Boggs in October 2009. SCR 3.130–1.7 was amended, effective July 15, 2009; and it appears the conduct resulting in charges occurred in late 2008 or early 2009, so apparently the last version of SCR 3.130–

1.7 in effect before July 15, 2009, was applicable. SCR 3.130–1.7(b)(2) currently states that so long as there is no concurrent conflict of interest, an attorney may represent a client if "the representation is not prohibited by law...."

**6.** SCR 1.9(a) was amended, effective July 15, 2009, and now requires that the former client give "informed consent, confirmed in writing ...." (not just consent after consultation) to allow the lawyer to represent another client in a matter substantially related to the lawyer's representation of a former client.

(Ky.1999).[7] The KBA asserts that while a public, or even private, reprimand may sometimes be an appropriate sanction for similar conflict of interest violations,[8] it believes that a probated suspension is warranted because of Boggs's disciplinary history, which also involved a violation of conflict of interest rules.

Having reviewed the parties' arguments, the relevant case law, the facts of this disciplinary case, and Boggs's prior disciplinary history, this Court finds the negotiated sanction appropriate, grants Boggs's Motion for Consensual Resolution, and ORDERS:

1) Kenneth M. Boggs is suspended from the practice of law for thirty days, with the period of suspension probated on the conditions set forth in this Opinion and Order;

2) Boggs must attend the entire Ethics and Professionalism Enhancement Program (EPEP) (anticipated to be approximately seven hours long) next offered by the KBA to be held under SCR 3.160 for the remedial education of Boggs regarding his ethical obligations to clients, third parties, and the public. Boggs must attend EPEP at his own expense and pass the exam given at the end of the program. Boggs must not apply for CLE credit of any kind for attendance at EPEP;

3) Boggs must furnish a release and waiver to the Office of Bar Counsel to review his records with the CLE Commission that might otherwise be confidential, such release to remain effective for one year from the completion of said EPEP in order to allow the Office of Bar Counsel to verify that he has not reported any remedial education hours to the CLE Commission for credit;

4) Boggs must not receive any more disciplinary charges for a period of one year from the entry of this order;

5) In accordance with SCR 3.450, Boggs must pay all costs associated with these disciplinary proceedings against him, said sum being $35.21, and for which execution may issue from this Court upon finality of this Opinion and Order; and

6) If Boggs fails to comply with any of the terms of discipline set forth in this order, including failure to attend the EPEP program or failure to pass the exam, the Court may impose a thirty-day suspension from the practice of law upon motion of the Kentucky Bar Association, Office of Bar Counsel.

All sitting. All concur.

---

7. In his earlier disciplinary case, Boggs had previously represented a married couple, who hired him to prepare deeds evenly dividing their real estate among the couple's adult daughters. One daughter provided information to Boggs on her parents' behalf; and he prepared a deed in accordance with the information, which later proved to be incorrect. When the parents later sued that daughter and her husband for fraud for allegedly giving incorrect information to obtain more than her fair share of the real property, Boggs was retained as counsel by the defendant daughter and her husband; and Boggs filed an answer on their behalf before eventually withdrawing as counsel after his former clients (the parent couple) alleged that he had violated conflict of interest rules. Boggs claimed not to have recognized the conflict of interest at first, but later admitted to violating SCR 1.9 and consented to a public reprimand. *Boggs,* 999 S.W.2d at 709–10.

8. *See An Unnamed Attorney v. Kentucky Bar Association,* 186 S.W.3d 741 (Ky.2006) (privately reprimanding attorney for failing fully to explain all ramifications of dual representation to clients, particularly how dual representation would affect duty of confidentiality); *Bezold v. Kentucky Bar Association,* 134 S.W.3d 556 (Ky.2004) (publicly reprimanding attorney for representing a client who was employed by the attorney and involved in a romantic relationship with the attorney).

ENTERED: March 24, 2011.

/s/ John D. Minton Jr.
CHIEF JUSTICE